STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2021 CA 1558

STACY ANN COOK

VERSUS

RICHARD WILLIAM COOK, JR.

**Judgment Rendered:** JUL 0 7 2022

* * * * * *

Appealed from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Suit Number 2019-11754

Honorable Patrice W. Oppenheim, Presiding

* * * * * *

Zara Zeringue                          Counsel for Plaintiff/Appellant
Kathleen M. Legendre                   Stacy Ann Cook
Covington, LA

Jessica L. Karr                        Counsel for Defendant/Appellee
Covington, LA                          Richard William Cook

And

James E. Moorman, III
Covington, LA

* * * * * *

BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.

**GUIDRY, J.**

Stacy Cook appeals from a judgment of the trial court granting Richard Cook's petition to revoke two June 8, 2018 donations of immovable property and declaring those donations revoked. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On October 17, 2002, Richard Cook purchased immovable property located at 143 Brandywine Court in Mandeville, Louisiana. Thereafter, Richard married Stacy Cook on August 28, 2004, and they used the Mandeville property as their marital residence. During the marriage, Richard also acquired as his separate property immovable property located at 705 Phlox Avenue, Metairie, Louisiana by way of donation from his mother.

Thereafter, on June 8, 2018, Richard executed two acts of donation. The first act donated an undivided one-half interest in the Mandeville property to Stacy in consideration "of the affection that he has for his wife, Stacy Cook." The second act donated an undivided one-half interest in the Metairie property to Stacy, also in consideration "of the affection that he has for his wife." However, on April 2, 2019, Stacy filed a petition for divorce pursuant to La. C.C. art. 102, alleging that the parties physically separated on March 14, 2019.

On January 24, 2020, Richard filed an answer to Stacy's petition, generally denying the allegations and further raising as an affirmative defense that Stacy was at fault in the break up of the parties' marriage and has been guilty of cruel treatment against him by engaging in an adulterous relationship and by denying him psychological and physical affection. Richard also filed a reconventional demand, requesting that divorce be granted based on La. C.C. art. 103(2), and a petition to revoke the two inter vivos donations. Richard alleged that the property that was the subject of the two donations was his separate property. Richard further alleged that beginning twelve months prior to the filing of divorce, Stacy began withdrawing from

2

the marriage, becoming psychologically and emotionally distant without just cause, and continuously denied Richard all forms of physical affection. Furthermore, Richard alleged that Stacy had engaged in an adulterous relationship during the marriage, but he did not discover her infidelity until after she had filed her petition for divorce. Richard alleged that Stacy's conduct caused him severe emotional distress and constitutes psychological and emotional cruel treatment; as such, he requested that the donations be revoked because of Stacy's ingratitude pursuant to La. C.C. art. 1557(2).

Stacy filed another petition for divorce on April 16, 2020, stating that she and Richard had lived separate and apart since March 14, 2019, a period of more than one year from the date the petition was filed, and requested a judgment of divorce. The trial court subsequently signed a default judgment granting a divorce to Stacy on July 29, 2020.

Thereafter, following a hearing on January 25, 2021, on Richard's petition to revoke donations, the trial court signed a judgment granting Richard's petition and revoking the June 8, 2018 donations of the Mandeville and Metairie property pursuant to La. C.C. art. 1557(2). Stacy filed a motion for new trial on February 22, 2021, arguing that the trial court's judgment was contrary to the law and evidence, in part, because it relied on this court's unpublished opinion in Gorman v. Gorman, 16-0332 (La. App. 1st Cir. 1/10/17), 2017WL123350 (unpublished opinion), writ denied, 17-0397 (La. 4/24/17), 219 So. 3d 1098, which Stacy argued was legally and factually misplaced. The trial court denied Stacy's motion for new trial. Stacy now appeals from the trial court's judgment, asserting that the trial court erred in revoking the donations based on adultery committed by Stacy.[1]

---

[1] The appeal was taken from the judgment denying the motion for new trial on the revocation judgment. Generally, where it is clear from the appellant's brief that the appellant intended to appeal a judgment on the merits, along with a judgment denying a motion for new trial, an appellate court will consider the appeal to be an appeal of the judgment on the merits even though the notice of appeal only refers to the judgment denying the motion for new trial. In re Interdiction of Cockerton, 21-1316, p. 2 n.1 (La. App. 1st Cir. 4/8/22), __ So. 3d __, __ n.1.

## DISCUSSION

A donation inter vivos is a contract by which the donor gratuitously divests himself, at present and irrevocably, of the thing given in favor of the donee who accepts it. La. C.C. art. 1468. However, La. C.C. art. 1556 provides that a donation inter vivos may be revoked because of ingratitude of the donee. Revocation of a donation on account of ingratitude may take place only if the donee has attempted to take the life of the donor or if the donee has been guilty towards the donor of cruel treatment, crimes, or grievous injuries. La. C.C. art. 1557. Grievous injuries sufficient to revoke a donation have been defined as any act or acts naturally offensive to the donor. Gorman, 16-0332 at p. 9, 2017WL123350 at *4.[2] The jurisprudence has held that cruel treatment or grievous injury sufficient to revoke a gratuitous donation may include adultery by a spouse. See La. C.C. art. 1557, Comments-2008, comment (c); see also Charles v. Charles, 20-1088, p. 4 (La. App. 1st Cir. 4/29/21), 2021WL1686234 *2 (unpublished opinion); Didier v. Simmons, 19-1100, p. 5 (La. App. 1st Cir. 5/11/20), 312 So. 3d 279, 282, writ denied, 20-00700 (La. 9/29/20), 301 So. 3d 1162; Gorman, 16-0332 at p. 9, 2017WL123350 at *4; Porter v. Porter, 36,007, p. 7 (La. App. 2nd Cir. 6/12/02), 821 So. 2d 663, 667.

The trial court's determination as to whether a donee has committed a grievous injury upon a donor is a factual determination, which depends heavily on the facts and circumstances specific to the case. Charles, 20-1088 at p. 4, 2021WL1686234 at *2.

---

[2] Stacy argues in her brief to this court that the trial court legally erred in relying on this court's decision in Gorman because it is an unpublished opinion. However, in 2006, the Louisiana legislature enacted La. C.C.P. art. 2168, which specifically provides:

> A. The unpublished opinions of the supreme court and the courts of appeal shall be posted by such courts on the Internet websites of such courts.

> B. Opinions posted as required by this Article may be cited and, if cited, shall be cited by use of the case name and number assigned by the posting court.

The Louisiana First Circuit Court of Appeal posts unpublished opinions and writ decisions on its website, and as such, these opinions may be cited as authority. See Elee v. White, 19-1633, p. 5 (La. App. 1st Cir. 7/24/20), 2020WL4251974 *3 (unpublished opinion), writ denied, 20-01048 (La. 11/10/20), 303 So. 3d 1038. Accordingly, we find any argument that the trial court erred in relying on Gorman because it is an unpublished opinion to be without merit.

4

As such, a court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Charles, 20-1088 at p. 4, 2021WL1686234 at *2.

At the hearing of this matter, Stacy testified that she filed for divorce on April 2, 2019, ten months following Richard's execution of the two acts of donation. Stacy admitted that at that time, Richard told her he did not want to be divorced and suggested marriage counseling; however, Stacy told him there was no need for that. (R. 119) Thereafter, on June 2, 2019, Stacy started dating H.D., who she had known as the father of her daughter's best friend. Stacy admitted that she and H.D. took multiple trips out of town, beginning in late July 2019, wherein they stayed in the same hotel room. Stacy further admitted that on one of those trips, on August 2, 2019, she and H.D. had sexual relations. Stacy also admitted that she stayed the night at H.D.'s home on occasion beginning in September 2019, and that she and H.D. went on a cruise together in October 2019, sharing a cabin. Stacy stated that she became aware on October 12, 2019, that Richard was upset about her relationship with H.D. when Richard showed up at H.D.'s house angry and intoxicated, Richard and H.D. had an altercation, and Richard was arrested. Stacy finally stated that a few days after her default judgment of divorce was confirmed on July 29, 2020, she and H.D. signed a lease on a rental house, where, as of the date of the trial, they resided together. Stacy also testified she consulted with legal counsel regarding a divorce in 2017, before Richard made the donations, but she never conveyed this information to Richard.

Richard testified that he signed the two acts of donation because he loved his wife and he did it for Stacy and their children. Richard stated that he had no idea at that time that Stacy was thinking about filing for divorce, and if he had known that she had consulted with an attorney in 2017, he would not have donated his property to Stacy. Richard stated that at the time of their separation, he did not want to be divorced. Richard stated that he allowed Stacy and the children to live in the marital

home, and he moved into a smaller house on the property, because he loved Stacy and wanted things to work out. Richard stated that when Stacy filed for divorce, he asked her if they could go to marriage counseling, and she told him she didn't need counseling. Richard stated that he was upset and sought family counseling by himself. According to Richard, he was in disbelief and still had hope that they would resolve any issues they had and things would go back to the way they were. However, Richard stated that he realized the marriage was over when he found out in August 2019 that Stacy was seeing someone else.

From our review of the record, we find no error in the trial court's judgment revoking the two donations on account of ingratitude. Stacy admitted that she engaged in a relationship with H.D. prior to any judgment of divorce being rendered, which relationship began shortly after she filed her petition for divorce and continued through the date of the revocation hearing. Stacy further admitted that this relationship involved physical intimacy. Stacy and Richard also acknowledged that Richard did not want to get divorced, that he wanted the parties to attend counseling, and that he was upset upon learning of Stacy's relationship with H.D. Accordingly, the record reasonably supports a finding that the adultery by Stacy caused a grievous injury to Richard, the donor, so as to support revocation of the two acts of donation.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are assessed to Stacy Cook.

**AFFIRMED.**